# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| **FEDERAL TRADE COMMISSION**, *et al.,* )<br>)<br>Plaintiffs, )<br>)<br>v. )<br>)<br>**CARIBBEAN CRUISE LINE, INC.**, *et al.,* )<br>)<br>Defendants. )<br>) | Case No. 0:15-cv-60423-WJZ |

## FEDERAL TRADE COMMISSION'S
## MOTION TO DISMISS COUNTERCLAIMS

Bikram Bandy, Sp. Bar No. A5501814
Gary L. Ivens, Sp. Bar No. A5500671
Federal Trade Commission
600 Pennsylvania Ave., NW, Rm. CC-8528
Washington, DC 20580
(202) 326-2978; bbandy@ftc.gov
(202) 326-2330; givens@ftc.gov

*Attorneys for Plaintiff, Federal Trade Commission*

August 13, 2015

# TABLE OF CONTENTS

Page

INTRODUCTION ...................................................................................................................1

BACKGROUND ....................................................................................................................2

    A.  Allegations Against Accuardi ......................................................................................2

    B.  Accuardi's Counterclaims............................................................................................3

ARGUMENT ..........................................................................................................................4

I.  Accuardi's Regulatory Taking Claim (Count One) Must Be Dismissed Because Accuardi
Closed His Business Voluntarily and He Fails to Allege Any FTC Action that Deprived
Him of a Property Right..................................................................................................4

II.  Accuardi's Tort Claims (Counts Two and Three) are Barred by Sovereign Immunity............9

III.  Accuardi's Declaratory Judgment Request (Count Four) Should Be Dismissed Because It Is
an Affirmative Defense, Not a Proper Counterclaim............................................................13

IV. The Court Must Dismiss the 42 U.S.C. § 1983 Claim (Count Five) Because Such
Claims Cannot Be Asserted Against a Federal Agency.........................................................14

CONCLUSION.......................................................................................................................14

Certificate of Service .............................................................................................................15

i

# TABLE OF AUTHORITIES

Page

**Cases**

*Architectural Ingenieria Siglo XXI, LLC v. Dominican Republic*,
    788 F.3d 1329 (11th Cir. 2015) ...................................................................9

*Arkansas Game and Fish Comm'n v. United States*, 133 S. Ct. 511 (2012) ...................................6

*Aronson v. United States*, 595 F. Supp. 178 (E.D. Pa. 1984),
    *aff'd mem.*, 774 F.2d 1150 (3d Cir. 1984)...........................................................12

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)...........................................................................5

*Autery v. United States*, 992 F.2d 1523 (11th Cir. 1993).................................................11

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) .....................................................5

*Berkovitz v. United States*, 486 U.S. 531 (1988) ............................................................10

*Corbett v. Transp. Security Admin.*, 968 F. Supp. 2d 1171 (S.D. Fla. 2012),
    *aff'd*, 568 Fed. Appx. 690 (11th Cir. 2014) .......................................................12

*Coto Settlement v. Eisenberg*, 593 F.3d 1031 (9th Cir. 2010) ........................................9

*Dalehite v. United States*, 346 U.S. 15 (1953)................................................................10

*Dalrymple v. United States*, 460 F.3d 1318 (11th Cir. 2006) .........................................12

*Davis v. Marsh*, 807 F.2d 908 (11th Cir. 1987)...............................................................12

*EEOC v. First Nat'l Bank of Jackson*, 614 F.2d 1004 (5th Cir. 1980)...................................11, 12

*Estate of Tucker v. Interscope Records, Inc.*, 515 F.3d 1019 (9th Cir. 2008) .................9

*Ewing v. Mytinger & Casselberry, Inc.*, 339 U.S. 594 (1950).........................................8

*FDIC v. Meyer*, 510 U.S. 471 (1994) .............................................................................9

*FTC v. Standard Oil Co. of Cal.*, 449 U.S. 232 (1980) ...................................................8

*Hoffman v. HUD*, 519 F.2d 1160 (5th Cir. 1975)...........................................................14

*Horne v. Dept. of Agriculture*, 133 S. Ct. 2053 (2013) ("*Horne I*") ...........................5, 8

*Horne v. Dept. of Agriculture*, 135 S. Ct. 2419 (2015) ("*Horne II*") ............................6

*Kingsland v. City of Miami*, 382 F.3d 1220 (11th Cir. 2004) ........................................9

*LabMD, Inc. v. FTC*, 776 F.3d 1275 (11th Cir. 2015)....................................................8

*Lingle v. Chevron U.S.A., Inc.*, 544 U.S. 528 (2005).....................................................4

*Lucas v. South Carolina Coastal Council*, 505 U.S. 1003 (1992)...............................4-5

*MacDonald, Sommer & Frates v. Yolo County*, 477 U.S. 340 (1986) ............................................6

*Matsko v. United States*, 372 F.3d 556 (3rd Cir. 2004) ...........................................................12

*Myers v. Bethlehem Shipbuilding Corp.*, 303 U.S. 41 (1938) ..................................................8

*O'Ferrell v. United States*, 253 F.3d 1257 (11th Cir. 2001) ............................................. 10-11

*Ohio Forestry Ass'n, Inc. v. Sierra Club*, 523 U.S. 726 (1998) ..............................................8

*Palazzolo v. Rhode Island*, 533 U.S. 606 (2001) .....................................................................6

*Penn Central Transp. Co. v. City of New York*, 438 U.S. 104 (1976) .....................................5

*Public Serv. Comm'n of Utah v. Wycoff Co., Inc.*, 344 U.S. 237 (1952) ..............................13

*R.J. Reynolds Tobacco Co. v. FTC*, 14 F. Supp. 2d 757 (M.D.N.C. 1998) ............................7

*Reahard v. Lee County*, 30 F.3d 1412 (11th Cir. 1994) ..........................................................5

*Seibert v. Baptist*, 594 F.2d 423 (5th Cir. 1979) ...................................................................14

*Simons v. Vinson*, 394 F.2d 732 (5th Cir. 1968) .....................................................................9

*Smith v. United States*, 375 F.2d 243 (5th Cir.1967) ............................................................11

*Smith v. Vowell*, 379 F. Supp. 139 (W.D. Tex. 1974),
    *aff'd mem.*, 504 F.2d 759 (5th Cir. 1974) ...........................................................................13

*Stop the Beach Renourishment, Inc. v. Florida Dept. of Envt'l Protection*,
    560 U.S. 702 (2010) ............................................................................................................5

*Suitum v. Tahoe Regional Planning Agency*, 520 U.S. 725 (1997) ...................................... 7-8

*Tahoe-Sierra Preservation Council, Inc. v. Tahoe Regional Planning Agency*,
    535 U.S. 302 (2002) .......................................................................................................5, 6

*United States v. Gaubert*, 499 U.S. 315 (1991). ....................................................................10

*United States v. Kubrick*, 444 U.S. 111 (1979) ......................................................................12

*United States v. Sponenbarger*, 308 U.S. 256 (1939) .............................................................6

*United States v. Shaw*, 309 U.S. 495 (1940) ...........................................................................9

*United States v. Timmons*, 672 F.2d 1373 (11th Cir. 1982) ...................................................9

*United States v. Varig Airlines*, 467 U.S. 797 (1984). ...........................................................10

*United Technologies Corp. v. Mazer*, 556 F.3d 1260 (11th Cir. 2009) ...................................9

*Williamson County Regional Planning Comm'n v. Hamilton Bank of Johnson City*,
    473 U.S. 172 (1985) .......................................................................................................5, 7

*Zelaya v. United States*, 781 F.3d 1315 (11th Cir. 2015) ......................................................10

**Constitution**

U.S. Const., Amend. V ...................................................................................................8

**Statutes**

U.S. Code, Title 15

    Federal Trade Commission Act ("FTC Act") .......................................................4

        15 U.S.C. § 45(a)(2) ........................................................................13

        15 U.S.C. § 45(b) .............................................................................7

        15 U.S.C. § 45(m) ...........................................................................7

        15 U.S.C. § 53(b) .............................................................................7

        15 U.S.C. § 57b ................................................................................7


U.S. Code, Title 28

    Federal Tort Claims Act ("FTCA") ......................................................... 1, 9-12

        28 U.S.C. § 1346(b) ......................................................................1, 9

        28 U.S.C. § 2401(b) .........................................................................12

        28 U.S.C. §§ 2671-2680 .................................................................1, 9

        28 U.S.C. § 2675(a) .........................................................................12

        28 U.S.C. § 2680(a) ....................................................................10, 11

        28 U.S.C. § 2680(h) ....................................................................11, 12

    Tucker Act

        28 U.S.C. § 1346(a) ..........................................................................8

        28 U.S.C. § 1346(a)(2).....................................................................8, 9

        28 U.S.C. § 1491 ..............................................................................8


U.S. Code, Title 42

    Civil Rights Act of 1871

        42 U.S.C. § 1983..........................................................................2, 4, 14

## Rules

Code of Federal Regulations

    16 C.F.R. § 4.11(c)...........................................................................................................7

    16 C.F.R. Part 310
        (Telemarketing Sales Rule ("TSR")) ...........................................................1, 3

    16 C.F.R. § 310.3(b) .......................................................................................................3

Federal Rules of Civil Procedure

    Fed. R. Civ. P. 8(c)(2)...................................................................................................13

    Fed. R. Civ. P. 12(a) .......................................................................................................2

    Fed. R. Civ. P. 12(b)(1)...................................................................................................2

    Fed. R. Civ. P. 12(b)(6)...................................................................................................2

    Fed. R. Civ. P. 12(f).......................................................................................................13

## INTRODUCTION

In this civil law enforcement action, the Federal Trade Commission ("FTC") and ten states allege that Fred Accuardi and the five corporate entities he controls (collectively, "Accuardi")[1] played a central role in facilitating illegal telemarketing campaigns that blasted out billions of unwanted "robocalls" to consumers.  (First Amended Complaint ("FAC"), DE 17). The complaint alleges that Accuardi provided substantial assistance and support to clients he knew were engaged in unlawful telemarketing practices, in violation of the Telemarketing Sales Rule ("TSR"), 16 C.F.R. Part 310.  Accuardi assisted his clients by enabling them to manipulate or falsify the Caller ID information transmitted with their illegal phone calls which, among other things, helped them evade detection by law enforcement agencies.  In a transparent attempt to divert attention from his own misconduct, Accuardi asserts five counterclaims alleging that the FTC committed a hodgepodge of supposed misdeeds in the course of its investigation.[2] (Counterclaims ("CC"), DE 19.)

As explained below, none of Accuardi's counterclaims is legally viable:

- Accuardi's regulatory taking counterclaim (Count One) fails to state a claim because he voluntarily shuttered his business and thus, he fails to allege any FTC action that deprived him of property.

- Accuardi's tort counterclaims – for retaliatory prosecution (Count Two) and unjust enrichment (Count Three) – are barred by sovereign immunity because both fall within exemptions to the limited waiver of immunity set forth in the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b) and 2671-2680.

---

[1] These entities are Pacific Telecom Communications Group, Inc.; International Telephone Corp.; International Telephone, LLC; Telephone Management Corp.; and TM Caller ID, LLC.  Fred Accuardi owns majority shares in each of these entities and serves as an officer, director, and/or manager of each.

[2] It is unclear which parties are asserting the counterclaims.  The caption of the filing (DE 19) indicates that all six of the Accuardi defendants are asserting counterclaims; but elsewhere in the document, only two of these parties (Pacific Telecom Communications Group, Inc. and Telephone Management Corp.) are identified as counterclaimants.  (CC ¶¶ 1-2.)

- Accuardi's declaratory judgment counterclaim (Count Four) seeks a ruling that the FTC lacks jurisdiction over his Caller ID management business. This is an affirmative defense, not a proper counterclaim, because it relates solely to the FTC's claims against him and has no conceivable bearing on any claims Accuardi may have against the FTC.

- Accuardi's counterclaim pursuant to 42 U.S.C. § 1983 (Count Five) must be dismissed because such claims cannot be asserted against federal agencies.

Because each of these counts fails to state a claim upon which relief can be granted or asserts claims that are beyond the subject-matter jurisdiction of this Court, the Court should dismiss them pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.[3]

## BACKGROUND

### A.   Allegations Against Accuardi

Accuardi provided Caller ID management services to telemarketing clients. His services consisted of assigning phone numbers to the clients and providing a web-based platform that enabled them to assign and modify at will the Caller ID names associated with each of these phone numbers. (FAC ¶¶ 90-110; CC ¶¶ 5-6.) Accuardi's services enabled the perpetrators of several massive, unlawful telemarketing campaigns to display numerous different Caller ID phone numbers with their calls and to transmit inaccurate or misleading Caller ID names with each call. This rampant manipulation of the Caller ID information thwarted consumers' attempts to block or screen unwanted calls and enabled Accuardi's clients to evade law enforcement investigations of their illegal telemarketing campaigns. (FAC ¶¶ 95-99.) Accuardi continued providing these services even though he knew his telemarketer clients were violating the TSR (*id.* ¶¶ 111-115), and he refused to comply with law enforcement requests to identify the

---

[3] In addition, Accuardi failed to serve his counterclaims on the United States Attorney as required by Rule 12(a)(2) of the Federal Rules of Civil Procedure.

telemarketers that originated illegal calls using his service.  (*Id.* ¶¶ 108-110.)  As such, the complaint alleges that Accuardi violated the TSR by providing substantial assistance to telemarketers making illegal calls.  *See* 16 C.F.R. § 310.3(b) (prohibiting the provision of substantial assistance or support to persons the party knows, or consciously avoids knowing, are engaged in acts or practices that violate the TSR).

### B.      Accuardi's Counterclaims

Accuardi asserts five counterclaims.  Count One is a taking claim in which Accuardi seeks compensation for the value of his Caller ID management business, which he closed on October 31, 2012.  (CC ¶ 9, 15.)  Accuardi claims that he was forced to shut down that business because, at an October 18, 2012 meeting with FTC employees, they allegedly threatened him with a law enforcement action if he did not do so, and he "felt [he] had no choice [but] to comply."  (*Id.* ¶¶ 8-9, 15.)  Accuardi contends that "the FTC's threat amounts to a government taking" (or "constructive taking") of his property and claims he is entitled to "fair and just compensation."  (*Id.* ¶ 15.).

Count Two seeks damages for purported retaliatory prosecution.  Specifically, Accuardi claims that the FTC reopened an earlier investigation into his practices because, in late 2011 or early 2012, Accuardi demanded that the FTC pay him for responding to FTC requests seeking information regarding illegal calls made by his clients.  (*Id.* ¶¶ 6, 8, 16.)   Accuardi alleges that the FTC ultimately filed the instant lawsuit against him as "punishment for [his] demanding compensation."  (*Id.* ¶ 16.)

In Count Three, Accuardi claims that the FTC has been unjustly enriched because, starting in 2008 and continuing until he demanded payment in late 2011 or early 2012, Accuardi provided information sought by the FTC without requesting or receiving any reimbursement for

the purportedly significant expenses he incurred in doing so.  (*Id.* ¶ 17.)  Accuardi asserts that the

FTC received "the benefit of [the] information" that he had previously been providing at his own

expense, and therefore, he is entitled to "just compensation for the resources that went [into]

accumulating, printing and providing such information."  (*Id.*)

In Count Four, Accuardi requests a declaratory ruling that the Caller ID management

services he provided are "common carriage" and "therefor[e] exempt under the FTC Act" from

FTC enforcement efforts.  (*Id.* ¶ 18.)

Finally, in Count Five, Accuardi seeks damages pursuant to 42 U.S.C. § 1983 based on

his claim that the FTC violated his constitutional due process and free speech rights by allegedly

threatening him with legal action if he did not close his Caller ID management business.  (CC

¶ 19.)

## ARGUMENT

### I.   ACCUARDI'S REGULATORY TAKING CLAIM (COUNT ONE) MUST BE DISMISSED BECAUSE ACCUARDI CLOSED HIS BUSINESS VOLUNTARILY AND HE FAILS TO ALLEGE ANY FTC ACTION THAT DEPRIVED HIM OF A PROPERTY RIGHT.

The Court should dismiss Accuardi's takings counterclaim for failure to state a claim.

The purportedly improper FTC action that Accuardi identifies as a taking of his property consists

of FTC employees' alleged oral statements that the agency would "come down" on Accuardi

unless he promptly shut down his Caller ID management business.  (CC ¶ 15.)  As explained

below, Accuardi takings claim has numerous legal deficiencies.

Accuardi does not allege that the FTC directly appropriated or physically invaded his

property.  His claim is therefore properly assessed under the framework of a "regulatory taking."

*Lingle v. Chevron U.S.A., Inc.*, 544 U.S. 528, 538-39 (2005) (citing *Lucas v. S.C. Coastal*

*Council,* 505 U.S. 1003, 1019 (1992)).[4]  To state a claim for regulatory taking on which relief

can be granted, Accuardi must show that, "at the time [he] sought judicial review," he "had been

injured by . . . . a final agency decision imposing concrete . . . penalties" or limitations on his

property interests. *Horne v. Dep't. of Agric.*, 133 S. Ct. 2053, 2061 (2013) ("*Horne I*") (citing

*Williamson Cty. Reg'l Planning Comm'n v. Hamilton Bank*, 473 U.S. 172, 186 (1985)).  That

showing must be plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atlantic Corp. v.

Twombly*, 550 U.S. 544, 570 (2007).  Here, Accuardi makes no plausible showing that the FTC

took his property.

      First, Accuardi fails to allege that the relevant FTC action – *i.e.*, its employees' purported

threatening statements – directly or proximately caused the loss of his property.  As his

counterclaim makes clear, Accuardi closed his business voluntarily, not because the FTC legally

compelled him to do so.  Accuardi concedes that, as of the date of the meeting when the alleged

threats of future law enforcement were made, "no fines or other sanctions [had been] imposed on

[him]." (CC ¶ 16.)  Nor does he allege that any court order, injunction, or other legally binding

mandate required him to close his business when he did.  Accuardi's contention that the FTC

employees' purported threats gave him "no choice" (*id.* ¶ 15) but to shut down the entirety of his

Caller ID management business is specious:  he does not and cannot plausibly allege that any

_____

[4] Courts assess whether a regulation or other government action constitutes a "regulatory taking" by conducting "essentially *ad hoc*, factual inquiries" into factors such as the "economic impact of the [action] on the claimant and, particularly, the extent to which the [action] has interfered with distinct investment-backed expectations . . . ." *Penn Cent. Transp. Co. v. City of New York*, 438 U.S. 104, 124 (1976).  Thus, a government action is likely to be deemed an unlawful "regulatory taking" if it "denies all economically beneficial or productive use" of a party's property, *Lucas*, 505 U.S. at 1015;  "imposes restrictions so severe that they are tantamount to a condemnation or appropriation" of the property, *Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency*, 535 U.S. 302, 322 n. 17 (2002); or "declares that what was once an established right of private property no longer exists."  *Stop the Beach Renourishment, Inc. v. Florida Dep't of Envtl. Prot.*, 560 U.S. 702, 715 (2010); *see also Reahard v. Lee County*, 968 F.2d 1131, 1135-37 (11th Cir. 1992) (discussing applicable factors in detail).

such threats prevented him from continuing to operate the business while defending against an enforcement lawsuit if and when the FTC filed one.  Simply put, Accuardi's decision to close his Caller ID management business was voluntary, and any losses he incurred were the direct result of and proximately caused by his own decision – not any statements purportedly made by FTC employees.  *See Ark. Game & Fish Comm'n v. United States*, 133 S. Ct. 511, 522 (2012) (no taking liability unless the claimed injuries were "caused by government action" or were its "foreseeable result"); *Tahoe-Sierra,* 535 U.S. at 344-45 ("ordinary principles of proximate cause govern the causation inquiry for takings claims").  Thus, the government did nothing that caused a taking of Accuardi's property.  A property owner cannot claim compensation for a taking where – as in this case – "there was no taking in the first place."  *Horne v. Dep't of Agric.*, 135 S. Ct. 2419, 2432 n.* (2015) ("*Horne II*") (citing *United States v. Sponenbarger*, 308 U.S. 256, 265 (1939)).

Second, Accuardi fails to allege any final agency action by the FTC.  A "final" agency determination is an "essential prerequisite to . . . assertion" of a regulatory taking claim, *MacDonald, Sommer & Frates v. Yolo Cty.*, 477 U.S. 340, 348 (1986), and a property owner cannot establish a taking unless the agency has had "the opportunity, using its own reasonable procedures, to decide and explain the reach of [the] challenged [action]."  *Palazzolo v. Rhode Island*, 533 U.S. 606, 620 (2001).  Here, Accuardi does not identify any final FTC decision that required him to close his business.  FTC staff members cannot commence enforcement actions on their own; only the Commission, acting by an affirmative vote of its Commissioners, has authority to do that.[5]  As such, FTC staff members' statements do not constitute a "final[]

_____

[5]An affirmative vote of a majority of participating Commissioners is required to authorize the Commission's filing of a complaint in federal court or issuance of an administrative adjudicatory

determin[ation]" by the agency as a whole.  *Suitum v. Tahoe Reg'l Planning Agency*, 520 U.S. 725, 738-39 (1997) (citing *Williamson Cty.*, 473 U.S. at 186).  Accuardi therefore fails to allege the requisite final agency determination necessary to establish a viable takings claim.

Third, even the vote of the full Commission authorizing filing of the FTC's complaint against Accuardi cannot sustain his takings claim.  The FTC can compel closure of a business in only two ways:  either—

> (i) the FTC Commissioners vote to issue an administrative complaint and commence an adjudicatory proceeding before an administrative law judge and, at the culmination of that proceeding, the Commission issues a cease and desist order, *see* 15 U.S.C. § 45(b); or

> (ii) the FTC Commissioners vote to authorize the filing of a civil law enforcement action in federal court (such as the present case), and the court subsequently enjoins the operation of a business.  *See* 15 U.S.C. §§ 45(m), 53(b), and 57b.

Here, the FTC did not issue an administrative complaint against Accuardi or a final, administrative cease and desist order requiring him to close his business.  Although the FTC *did* file a federal enforcement lawsuit against Accuardi, only the Court, not the FTC, can issue an order enjoining Accuardi's conduct.  The FTC's complaint does not and cannot legally compel Accuardi to do (or not to do) anything.  Accordingly, the FTC's complaint does not constitute a "final" or "definitive" decision that controls whether and to what extent the defendant's use of the property at issue will be permitted, and thus cannot be challenged as a taking.  *Suitum*,

---

complaint. *See* 16 C.F.R. § 4.11(c).  The Commission has not delegated that authority.  Indeed, the Commission sometimes votes to reject FTC staff recommendations to initiate an action and directs staff to close an investigation.  *See, e.g., R.J. Reynolds Tobacco Co. v. FTC*, 14 F. Supp. 2d 757, 758 (M.D.N.C. 1998).

520 U.S. at 737-39; *accord Horne I*, 133 S. Ct. at 2062-63.[6]  Moreover, given that the agency's *actual filing* of a lawsuit does not deprive Accuardi of any use of his property and cannot constitute a taking, an FTC employee's alleged speculative statements concerning the *possible future filing* of a complaint also cannot give rise to a valid taking claim.[7]

Finally, Accuardi's claim that he is entitled to compensation due to FTC employees' alleged threats to bring enforcement action is unprecedented and cannot be taken seriously. Government agencies' law-enforcement efforts would be stymied if a mere conversation with a potential enforcement target about a possible future lawsuit could subject an agency to such claims.  Indeed, if the voluntary closure of a business in response to a threatened law enforcement suit can be a taking, then anyone running an illegal business that is threatened with enforcement action need only close the business and sue the government for compensation.  The Fifth Amendment does not impose liability on the government so easily.  *Cf. Ewing v. Mytinger & Casselberry, Inc.*, 339 U.S. 594, 598-99 (1950); *Myers v. Bethlehem Shipbuilding Corp.*, 303 U.S. 41, 50-52 (1938).  "Judicial review of the averments in the Commission's complaints should not be a means of turning prosecutor into defendant before adjudication concludes."  *FTC v. Standard Oil Co. of Cal.*, 449 U.S. 232, 243 (1980).

---

[6] *Cf. LabMD, Inc. v. FTC*, 776 F.3d 1275, 1278 (11th Cir. 2015) (rejecting claim that issuance of complaint "effectively determined there would be legal consequences imposed on LabMD," since "no direct and appreciable legal consequences flowed from [that] FTC action") (quotation omitted); *Ohio Forestry Ass'n v. Sierra Club*, 523 U.S. 726, 733 (1998) (agency actions were non-justiciable where they "[did] not command anyone to do anything or to refrain from doing anything; they [did] not grant, withhold, or modify any formal legal license, power, or authority; they [did] not subject anyone to any civil or criminal liability; [and] they create[d] no legal rights or obligations.").

[7] In addition, to the extent that Accuardi claims that his losses from the closure of his Caller ID management business exceeded $10,000, this Court must dismiss Accuardi's taking counterclaim for lack of subject matter jurisdiction.  Under the Tucker Act, 28 U.S.C. §§ 1346(a) & 1491, the Court of Federal Claims is the exclusive venue for lawsuits seeking monetary compensation over $10,000 for taking of property.  District Courts lack jurisdiction to consider such claims.  *Id.* § 1346(a)(2).

## II.  ACCUARDI'S TORT CLAIMS (COUNTS TWO AND THREE) ARE BARRED BY SOVEREIGN IMMUNITY.

"Sovereign immunity is jurisdictional in nature," and "[a]bsent a waiver, sovereign immunity shields the Federal Government and its agencies from suit." *FDIC v. Meyer*, 510 U.S. 471, 475 (1994).  "[T]his restriction applies whether the claim . . . is asserted in the form of an original action or as a counterclaim." *United States v. Timmons*, 672 F.2d 1373, 1378 (11th Cir. 1982) (citing *United States v. Shaw*, 309 U.S. 495 (1940)).  "The immunity of the sovereign . . . extends to . . . [its] agencies," and thus bars monetary claims against the FTC as well as claims against the United States, absent an explicit statutory waiver. *Simons v. Vinson*, 394 F.2d 732, 736 (5th Cir. 1968).  Although Congress may waive the federal government's immunity by statute, "as a general rule, explicit waivers of sovereign immunity are narrowly construed in favor of the sovereign and are not enlarged beyond what the [statutory] language requires." *Architectural Ingenieria Siglo XXI, LLC v. Dominican Republic*, 788 F.3d 1329, 1338 (11th Cir. 2015) (citation omitted).

The Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b) & 2671-2680, is the only statute that waives government sovereign immunity to permit damages lawsuits "sounding in tort." *Id.* § 1346(a)(2).  Accuardi's retaliatory prosecution and unjust enrichment claims (Counts Two and Three) "sound in tort" and therefore can proceed only if allowed under the FTCA.[8]  As explained below, the FTCA does not waive sovereign immunity for those tort counterclaims.

---

[8] Retaliatory or "malicious prosecution" is a tort under the common law of Florida, *see Kingsland v. City of Miami*, 382 F.3d 1220, 1234 (11th Cir. 2004), and other states.  *See, e.g.*, *Estate of Tucker v. Interscope Records, Inc.*, 515 F.3d 1019, 1030-32 (9th Cir. 2008) (California law).  Similarly, a claim of "[u]njust enrichment is essentially another way of stating a tort claim." *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1041 (9th Cir. 2010) (Washington law); *accord United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1268 (11th Cir. 2009) (discussing Florida law governing tort of "unjust enrichment").

First, the FTCA expressly does *not* waive sovereign immunity to permit tort claims predicated on an agency's "exercise or performance [of] . . . a discretionary function or duty." *Id.* § 2680(a); *see Zelaya v. United States*, 781 F.3d 1315, 1322-23 (11th Cir. 2015). The "discretionary function" exemption compels dismissal of Counts Two and Three. As explained below, the governmental actions at issue in both of these counts – *i.e.*, the FTC's investigation of Accuardi and its refusal to compensate Accuardi for providing the information that the agency requested – are classic discretionary functions.

Discretionary functions are defined as acts that "involv[e] an element of judgment or choice," *Berkovitz v. United States*, 486 U.S. 531, 536 (1988), including "administrative decisions grounded in social, economic, and political policy." *United States v. Varig Airlines*, 467 U.S. 797, 814 (1984). The discretionary function exception "plainly was intended to encompass the discretionary acts of the Government acting in its role as a regulator of the conduct of private individuals," *id.* at 813-14, and protects "the discretion of the executive or the administrator to act according to one's judgment of the best course." *Dalehite v. United States*, 346 U.S. 15, 34 (1953). "When established governmental policy, as expressed or implied by statute, regulation, or agency guidelines, allows a Government agent to exercise discretion, it must be presumed that the agent's acts are grounded in policy when exercising that discretion," particularly in the case of agencies (such as the FTC) that typically establish and implement "policy on a case-by-case basis, whether through adjudicatory proceedings or through administration of agency programs." *United States v. Gaubert*, 499 U.S. 315, 324 (1991).

Moreover, a federal agency's conduct of a law enforcement investigation "involves elements of judgment and choice – the central ingredients of discretion" – and thus "would appear to be a paradigmatic example of a discretionary function." *O'Ferrell v. United States*,

10

253 F.3d 1257, 1267 (11th Cir. 2001) (FBI agents' purported "threats" during their interrogation of a suspect, consisting of statements about the severe penalties the suspect might face if charged and convicted, were shielded by the discretionary function exemption); *see also Smith v. United States*, 375 F.2d 243, 248 (5th Cir.1967) ("§ 2680(a) exempts the government from liability for exercising the discretion inherent in the prosecutorial function of the Attorney General, no matter whether these decisions are made during the investigation or prosecution of offenses").

Here, Accuardi seeks to impose liability for the FTC's decision to sue him, and for its employees' decisions on whether to investigate him and how to conduct that investigation, including whether, how, and when to gather information from him and whether to pay for such information.  These policy judgments are at the core of the FTCA's discretionary function exemption.  Accuardi does not allege – and there would be no basis for an allegation – that any of these decisions were subject to any "mandatory regulation or policy that allowed no judgment or choice." *Autery v. United States*, 992 F.2d 1523, 1526 (11th Cir. 1993).  Thus, the retaliatory prosecution and unjust enrichment counterclaims fall within the FTCA's discretionary function exemption, and sovereign immunity therefore compels dismissal of these counterclaims.

Accuardi's retaliatory prosecution counterclaim fails for the additional reason that it falls within the FTCA's preservation of sovereign immunity against claims asserting "malicious prosecution, abuse of process, . . . misrepresentation, deceit, or interference with contract rights." 28 U.S.C. § 2680(h).  This exemption, for example, precluded defendants in a federal enforcement action from counterclaiming on the grounds that the agency's suit was intended to "defraud, vex, and harass" them, "maliciously and for ulterior purposes," by means of "unlawfully conceived, groundless, vexatious, and fraudulent charges."  *EEOC v. First Nat'l*

*Bank of Jackson*, 614 F.2d 1004, 1007 (5th Cir. 1980) (quoting defendants' brief).[9] Accuardi's retaliatory prosecution claim falls squarely within the FTCA's malicious prosecution exemption, and it therefore must be dismissed on sovereign immunity grounds.

Finally, Accuardi's tort counterclaims for retaliatory prosecution and unjust enrichment are barred because he never presented them to the FTC prior to asserting them for the first time in this action. The FTCA requires parties claiming compensation for physical injuries or property damage to present their claims to the appropriate federal agency and does not allow them to sue unless the agency has considered and denied those claims. 28 U.S.C. § 2675(a). "Noncompliance with § 2675 deprives a claimant of federal court jurisdiction over his or her claim." *Davis v. Marsh*, 807 F.2d 908, 911 (11th Cir. 1987); *see also Dalrymple v. United States*, 460 F.3d 1318, 1324 (11th Cir. 2006). Accordingly, sovereign immunity bars Accuardi's retaliatory prosecution and unjust enrichment claims, and those claims must be dismissed.[10]

---

[9] Although a proviso in the FTCA permits suits against agencies for the acts of their "investigative or law enforcement officers" in some circumstances, *see* 28 U.S.C. § 2680(h), regulatory agencies such as the FTC and their employees do not qualify as "investigative or law enforcement officers" for these purposes because they are not "empowered by law to execute searches, to seize evidence, or to make arrests for violations of Federal law." *First Nat'l Bank of Jackson*, 614 F.2d at 1007-08; *accord Corbett v. Transp. Sec. Admin.*, 968 F. Supp. 2d 1171, 1185 (S.D. Fla. 2012) ("employees of administrative agencies, no matter what investigative conduct they are involved in, do not come within the § 2680(h) exception" for "investigative or law enforcement officers") (quoting *Matsko v. United States*, 372 F.3d 556, 560 (3rd Cir. 2004)), *aff'd*, 568 Fed. Appx. 690, 700-01 (11th Cir. 2014); *see also Aronson v. United States*, 595 F. Supp. 178, 180 (E.D. Pa. 1984), *aff'd mem.*, 774 F.2d 1150 (3d Cir. 1984) (holding, on the same grounds, that government attorneys are not law enforcement officers).

[10] Moreover, Accuardi cannot present his unjust enrichment claim to the FTC now, because the FTCA imposes a two-year statute of limitations that provides that claims are "forever barred" if they were not "presented in writing to the appropriate federal agency within two years" after they first accrued. 28 U.S.C. § 2401(b). Accuardi alleges that the FTC actions that form the basis of Count Three occurred between 2008 and 2012. (CC ¶¶ 6-9, 15-17.) Accuardi filed his counterclaims on June 2, 2015 – over three years after "late 2011 or early 2012," when he allegedly stopped "expend[ing] considerable sums of money providing valuable information to the FTC." (*Id.* ¶¶ 6, 16.) *See also United States v. Kubrick*, 444 U.S. 111, 123 (1979) (a claim under the FTCA "accrues" when the plaintiff has knowledge of an injury and its cause).

III.   **ACCUARDI'S DECLARATORY JUDGMENT REQUEST (COUNT FOUR) SHOULD BE DISMISSED BECAUSE IT IS AN AFFIRMATIVE DEFENSE, NOT A PROPER COUNTERCLAIM.**

Count Four asks the Court to declare that Accuardi's Caller ID management services "are 'common carriage' . . . and [therefore] exempt under the FTC Act." (CC ¶ 18.)  This requested ruling is not actually a claim against the FTC at all, but an affirmative defense to the FTC's lawsuit "mistakenly designate[d] . . . as a counterclaim." Fed. R. Civ. P. 8(c)(2).  Indeed, other affirmative defenses asserted by Accuardi raise virtually identical arguments.  (*See, e.g.*, DE 19, at 8-10, Affirmative Defenses ¶¶ 2, 4, 5, and 6.)  As such, the Court may properly strike Count Four, pursuant to Fed. R. Civ. P. 8(c)(2) and 12(f), as duplicative of those other affirmative defenses.

Count Four also should be dismissed because it serves no "useful purpose in clarifying and settling the legal relations in issue" in the context of Accuardi's claims against the FTC. *Smith v. Vowell*, 379 F. Supp. 139, 163 (W.D. Tex. 1974), *aff'd mem.*, 504 F.2d 759 (5th Cir. 1974); *see also Pub. Serv. Comm'n v. Wycoff Co., Inc.*, 344 U.S. 237, 246 (1952) (where an agency has brought enforcement proceedings against a party, "[i]t would not be tolerable" to allow that party to seek a declaratory judgment in order to collaterally attack the agency's authority and thereby "forestall [those] proceedings").  Accuardi, not the FTC, provided Caller ID management services; and it is Accuardi, not the FTC, whose liability might be affected by a ruling on the scope of the FTC Act's common carriage exemption (15 U.S.C. § 45(a)(2)).  The regulatory status of Accuardi's Caller ID management services has no bearing on whether and to what extent the FTC is liable to Accuardi.  Count Four thus fails to state a claim upon which relief may be granted and must be dismissed.

## IV. THE COURT MUST DISMISS THE 42 U.S.C. § 1983 CLAIM (COUNT FIVE) BECAUSE SUCH CLAIMS CANNOT BE ASSERTED AGAINST A FEDERAL AGENCY.

Count Five seeks to recover damages from the FTC for purported constitutional violations, pursuant to 42 U.S.C. § 1983.  This counterclaim is frivolous.  By its terms, Section 1983 authorizes only claims against a "person" who acts "under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia."  Federal agencies cannot be sued under Section 1983 because they are not "persons" for purposes of that section, *see Hoffman v. HUD*, 519 F.2d 1160, 1165 (5th Cir. 1975), and they act under color of *federal* law, not state law.  *See Seibert v. Baptist*, 594 F.2d 423, 429 (5th Cir. 1979).

## CONCLUSION

For the foregoing reasons, the Court should dismiss the counterclaims for lack of jurisdiction and failure to state a claim.

Dated:  August 13, 2015                    Respectfully submitted,

                                           /s/ Bikram Bandy
                                           Bikram Bandy, Sp. Bar No. A5501814
                                           Gary L. Ivens, Sp. Bar No. A5500671
                                           Federal Trade Commission
                                           600 Pennsylvania Ave., NW, Rm. CC-8528
                                           Washington, DC 20580
                                           (202) 326-2978; bbandy@ftc.gov
                                           (202) 326-2330; givens@ftc.gov

                                           *Attorneys for Plaintiff, Federal Trade Commission*

**CERTIFICATE OF SERVICE**

I hereby certify that on August 13, 2015, I served the foregoing document on the

following as indicated:

**VIA E-MAIL**

Richard Epstein, Esq.                              Mitchell N. Roth, Esq.
Jeffrey A. Backman, Esq.                       Roth Doner Jackson, PLC
200 East Broward Boulevard, Suite 1800   8200 Greensboro Drive, Suite 820
Fort Lauderdale, FL  33301                   McLean, VA  22102

Steve Hamilton
3721 Ocean View Ave.
Los Angeles, CA  90066
   *Pro Se*

**VIA CM/ECF:**

F. Antone Accuardi, Esq.                         Edwin M. Walker
2331 SW 5th Ave.                                   Walker Law Firm
Portland, OR 97201                              500 Australian Ave., Suite 600
                                                West Palm Beach, FL 33401

Devin Laiho                                        Katherine A. Kiziah
Assistant Attorney General                     Assistant Attorney General
Consumer Protection                            1515 North Flagler Dr., Suite 900
Ralph L. Carr Colorado Judicial Center      West Palm Beach, FL 33401
1300 Broadway, Seventh Floor
Denver, CO 80203

Marguerite M. Sweeney                          Meghan E. Stoppel
Deputy Attorney General                        Assistant Attorney General
Office of the Indiana Attorney General       Office of the Kansas Attorney General
302 W. Washington St., 5th Floor            120 SW 10th Avenue, 2nd Floor
Indiana Government Center South              Topeka, KS 66612

Frank Farmer                                       Mary D. Morris
Special Assistant Attorney General           Assistant Attorney General
Office of the Mississippi Attorney General   P.O. Box 861
Post Office Box 1174                           St. Louis, MO 63188
Jackson, MS 39215-1174

15

David N. Kirkman
Special Deputy Attorney General
Consumer Protection Division
North Carolina Department of Justice
114 West Edenton Street
P.O. Box 629
Raleigh, NC 27602-0629

Shiva K. Bozarth
Chief of Compliance
Tennessee Regulatory Authority
502 Deadrick Street, 4th Floor
Nashville, Tennessee 37243

Megan E. McNulty
Associate Assistant Attorney General
Consumer Protection Section
Office of Ohio Att'y Gen. Michael DeWine
One Government Center, Suite 1340
Toledo, OH 43604

Sarah Shifley
Assistant Attorney General
Consumer Protection Division
Washington State Att'y General's Office
800 Fifth Ave., Ste. 2000
Seattle, WA 98104

/s/ Bikram Bandy
Bikram Bandy